1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6    ANNE B.,[1]                          Case No.  22-cv-07012-TSH

7              Plaintiff,

8         v.                             **ORDER RE: CROSS-MOTIONS FOR
                                         SUMMARY JUDGMENT**
9    KILOLO KIJAKAZI,
                                         Re: Dkt. Nos. 17, 21
10             Defendant.

11

12                    **I.    INTRODUCTION**

13        Plaintiff Anne B. moves for summary judgment to reverse the decision of Defendant

14   Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability

15   benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 17.  Defendant cross-

16   moves to affirm.  ECF No. 21.  Pursuant to Civil Local Rule 16-5, the matter is submitted without

17   oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and

18   relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's

19   cross-motion for the following reasons.[2]

20                    **II.    PROCEDURAL HISTORY**

21        On July 13, 2020, Plaintiff filed an application for Social Security Disability Insurance and

22   Supplemental Security Income benefits with a disability onset date of June 1, 2015.  AR 610, 612.

23   Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an

24   Administrative Law Judge ("ALJ").  AR. 535.  An ALJ held a hearing on November 5, 2021 and

25

26   _____

27   [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
     recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States.

28   [2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 8
     & 10.

1   issued an unfavorable decision on December 21, 2021.  AR 369-79.  The Appeals Council denied

2   Plaintiff's request for review on June 7, 2022.  AR 20-25.  Plaintiff now seeks review pursuant to

3   42 U.S.C. § 405(g).

### III.    ISSUES FOR REVIEW

5       Plaintiff raises three issues on appeal: (1) whether the ALJ erred in finding Plaintiff's

6   impairment of adjustment disorder with anxiety and depression non-severe; 2) whether the ALJ

7   erred in discrediting Plaintiff's statements regarding her symptoms and limitations; and 3) whether

8   the ALJ's findings regarding medical opinions are supported by substantial evidence.  Plaintiff's

9   Motion for Summary Judgment ("Pl's Motion") at 1.

### IV.    STANDARD OF REVIEW

11      42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

12  to deny disability benefits, but "a federal court's review of Social Security determinations is quite

13  limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Court may set aside a

14  denial of benefits only if "it contains legal error or is not supported by substantial evidence."

15  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Substantial means

16  "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept

17  as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned

18  up).  Under this standard, the Court looks to the existing administrative record and asks "whether

19  it contains 'sufficient evidence' to support the agency's factual determinations."  *Id.* (cleaned up).

20      The Court "must consider the entire record as a whole, weighing both the evidence that

21  supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

22  simply by isolating a specific quantum of supporting evidence."  *Garrison*, 759 F.3d at 1009

23  (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in

24  medical testimony, and for resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence

25  can reasonably support either affirming or reversing a decision," the Court must defer to the

26  decision of the ALJ.  *Id.* (citation omitted).  "'Even when the ALJ commits legal error, [courts]

27  uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the

28  ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may

United States District Court
Northern District of California

1    reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'"

2    *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

3    1099 (9th Cir. 2014)).  But "[a] reviewing court may not make independent findings based on the

4    evidence before the ALJ to conclude that the ALJ's error was harmless."  *Id.*  The Court is

5    "constrained to review the reasons the ALJ asserts."  *Id.* (cleaned up); *Pinto v. Massanari*, 249

6    F.3d 840, 847 (9th Cir. 2001) (courts "cannot affirm the decision of an agency on a ground that the

7    agency did not invoke in making its decision.").

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

10          A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

11    substantial gainful activity by reason of any medically determinable physical or mental

12    impairment which can be expected to result in death or which has lasted or can be expected to last

13    for a continuous period of not less than twelve months" and (2) the impairment is "of such severity

14    that he is not only unable to do his previous work but cannot, considering his age, education, and

15    work experience, engage in any other kind of substantial gainful work which exists in the national

16    economy."  42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

17    To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

18    analysis.  20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same

19    standard for supplemental security income).  The claimant bears the burden of proof at steps one

20    through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

21          At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

22    gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

23    involves significant mental or physical activities."  *Ford*, 950 F.3d at 1148 (cleaned up).  Here, the

24    ALJ determined Plaintiff had not performed substantial gainful activity since June 1, 2015.  AR

25    372.

26          At step two, the ALJ decides whether the claimant's impairment or combination of

27    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

28    claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

(quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.
20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff 's epilepsy constituted a severe
impairment.  AR 372.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of
impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the
"listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings
describe impairments that are considered "to be severe enough to prevent an individual from doing
any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective
medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).
"For a claimant to show that his impairment matches a listing, it must meet all of the specified
medical criteria.  An impairment that manifests only some of those criteria, no matter how
severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a
claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent
to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering
age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff
did not have an impairment or combination of impairments that meets the listings.  AR 373.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses
the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do
despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to
perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,
that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do
it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can
perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ
determined Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c)
and 416.967(c).  AR 374.  The ALJ determined, due to Plaintiff's seizure impairments, she should
never climb ladders, ropes, or scaffolds.  AR 374, 377.  Further, her job duties should not involve
hazards, such as dangerous machinery, unprotected heights, sharp objects, or driving.  AR 377.
Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.  AR 377.

4

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including cleaner (DOT # 919.687-014), dining room attendant (DOT #311.677-018), and laundry worker (DOT # 361.684-014).  AR 378.  As such, the ALJ determined Plaintiff could make a successful adjustment to other work and was not disabled.  AR 379.

**B.      Finding of Non-Severe Impairment of Adjustment Disorder with Anxiety and Depression**

**1.      Legal Standard**

"The evaluation at step two is a de minimis test intended to weed out the most minor of impairments."  *Wilson v. Astrue*, No. EDCV 09-1765 SS, 2010 WL 3894679, at *5 (C.D. Cal. Oct.

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*
[4] The DOT classifies jobs by their exertional and skill requirements.  20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto*, 249 F.3d at 846 (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

United States District Court
Northern District of California

1, 2010) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001)). Under that standard, "[a]n impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotations omitted). Such a conclusion must be "'clearly established by medical evidence.'" *Id.* at 687 (quoting *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985)). "In determining whether a claimant's physical or mental impairments are of a sufficient medical severity" that they could be the basis of eligibility, an ALJ considers "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B). A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [the claimant's] impairment or combination of impairment(s) is severe." 20 C.F.R. § 404.1529(d)(1). "If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen*, 482 U.S. at 146. The burden is on a claimant to demonstrate that she has a medically severe impairment or combination of impairments. *Id.*; *id.* at n.5 ("The claimant first must bear the burden . . . at step two that [s]he has a medically severe impairment or combination of impairments . . . .").

For mental impairments, "the reviewer must determine whether an applicant has a medically determinable mental impairment, 20 C.F.R. § 404.1520a(b), rate the degree of functional limitation for four functional areas, *id.* § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), *id.* § 404.1520a(c)(1), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, *id.* § 404.1520a(c)(2)." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). The four functional areas that must be rated are: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and ) adapt or manage oneself. 20 C.F.R. §

6

404.1520a(c)(3).

## 2. Analysis

The Court notes at the outset of this analysis that step two "is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Here, although the ALJ determined that Plaintiff's mental impairment was non-severe, step two was decided in her favor. Thus, the ALJ's determination that her mental impairments were not severe at step two would not have prejudiced Plaintiff, so long as her mental impairments were taken into account when determining the RFC. *See Buck*, 869 F.3d at 1049. Plaintiff argues that she was prejudiced at step two because the ALJ did not incorporate any mental limitations into the RFC. Pl's Mot. at 5. It is true the ALJ did not do that. AR 374. Thus, as Plaintiff argues the ALJ failed in incorporating Plaintiff's mental limitations in the RFC, the Court considers Plaintiff's arguments regarding her mental limitations.

At step two, the ALJ found that Plaintiff had a medically determinable mental impairment of adjustment disorder, but that this condition did not cause more than minimal limitation in Plaintiff's ability to perform mental work activities and was therefore non-severe. AR 372. The ALJ assessed Plaintiff's limitations in the four functional areas and concluded that Plaintiff had no limitations in understanding, remembering, or applying information, or in adapting or managing herself. AR 373. The ALJ also concluded that Plaintiff had mild limitation in interacting with others and concentrating, persisting, or maintaining pace. AR 373. Based on the findings of only mild limitations in two categories and the lack of other evidence indicating more than a minimal limitation in the claimant's ability to do basic work activities, the ALJ found Plaintiff's mental impairment non-severe. AR 373.

Plaintiff argues that the ALJ's conclusion was error because Plaintiff has more than mild limitation in interacting with others and her daily activities are consistent with more than a minimal limitation in her ability to perform work activities. Pl's Mot. at 4-5. The Court agrees

United States District Court
Northern District of California

1    with Plaintiff that the ALJ's determination of mild limitation in interacting with others is not

2    supported by substantial evidence.  The ALJ relied upon Dr. Dixit's consultative examination in

3    assessing Plaintiff's limitations, but, as discussed further below, did not address Dr. Dixit's

4    finding that Plaintiff had mild to moderate limitation in interacting with the public.  AR 820.

5    Additionally, the ALJ noted that Plaintiff is able to interact with friends and family, but did not

6    provide evidence in support of such a finding.  The ALJ cites to Dr. Dixit's report on this point,

7    but Dr. Dixit noted that Plaintiff's personal and social life have been "enslaved by her medical

8    condition as she has to deal with seizures," not that she was able to interact with friends and

9    family.  AR 818.  The Commissioner defends the ALJ's finding that Plaintiff was able interact

10   with family and friends by arguing that Dr. Dixit did not report that Plaintiff could *not* do so.

11   Defendant's Cross-Motion for Summary Judgment ("Def's Mot.") at 4.  The Court does not agree

12   that Dr. Dixit *not* stating that Plaintiff has difficulties with family and friends serves as evidence

13   for the ALJ to conclude affirmatively that Plaintiff is able to do so.  *Cf. Batson v. Comm'r of Soc.*

14   *Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if

15   supported by inferences reasonably drawn from the record.").

16           The ALJ cites other evidence in support of mild limitation in interacting with others, but

17   the Court does not find this remaining evidence substantial.  The ALJ found that Plaintiff shopped

18   in public, but omitted that Plaintiff only did so when accompanied.  AR 819.  Additionally, the

19   ALJ found that there were no recorded issues of Plaintiff having problems functioning socially

20   when seeking treatment, such as difficulty waiting in public areas, behaving inappropriately with

21   office staff, or being unable to form a therapeutic rapport with treatment providers.  AR 373.  As

22   pointed out by Plaintiff, most of Plaintiff's medical appointments were via telehealth starting in

23   2020 and thus she did not wait in public areas.  *See, e.g.*, AR 895, 909, 935, 939, 943, 949, 954,

24   957, 963, 968, 973, 978, 983, 988, 1003, 1008, 1032.  Finally, given the issues with the other

25   evidence, the Court does not consider the lack of evidence that Plaintiff behaved inappropriately

26   with office staff or was unable to form a rapport with treatment providers to be substantial

27

28

United States District Court
Northern District of California

8

evidence that Plaintiff had only mild limitation in interacting with others.[5]

In sum, the ALJ erred in his analysis of Plaintiff's mental limitations by finding only mild limitations in interacting with others without providing substantial evidence. This error was not harmless as the ALJ did not incorporate any mental limitations in Plaintiff's RFC.

**C.     Plaintiff's Credibility**

**1.     Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear

---

[5] Plaintiff also argues that the ALJ erred in assessing Plaintiff's daily activities. Pl's Mot. at 3-4. Although the ALJ did provide a summary of Plaintiff's activities (AR 372), it does not appear to the Court that the ALJ made findings as to Plaintiff's daily activities in determining she had no more than mild mental limitations. To the extent the ALJ did or would do so, the Court agrees that the ALJ's description of daily activities does not provide a full picture. The ALJ noted that Plaintiff was able to perform household chores, such as washing dishes, doing laundry, and taking out the trash. AR 372. Plaintiff qualified in her own report of these activities that she could not do so when fatigued. AR 819. Plaintiff reported fatigue and inability to sleep on many occasions and stated it was one of the reasons her depression prevented her from working. *See* AR 398 (testimony that her depression stopped her from working, in part, because she is unable to sleep); 818 (November 18, 2020 visit with Dr. Dixit reporting she sleeps poorly due to anxiety); 975 (December 8, 2020 assessment recording she feels tired or has little energy nearly every day); 937 (March 16, 2021 assessment recording she feels tired or has little energy nearly every day); 949 (January 27, 2021 Plaintiff reported she has sleeping pills but they do not help). A finding by the ALJ related to these daily activities would need to account for Plaintiff's fatigue issues. *See* 20 C.F.R. § 404.1529(d)(1) (a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [the claimant's] impairment or combination of impairment(s) is severe."). "[T]he Ninth Circuit has repeatedly warned about the dangers of considering a claimant's daily activities without the necessary context to determine if they truly rebut the claimed severity of an impairment." *Guzman v. Berryhill*, 356 F. Supp. 3d 1025, 1039 (S.D. Cal. 2018); *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 676, 682 (9th Cir. 2017) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (superseded on other grounds by 20 C.F.R. § 404.1502(a)). The ALJ weighing Plaintiff's ability to complete chores without also considering the report that she could not do so when fatigued, and Plaintiff's corresponding complaints of fatigue, would constitute error.

1
2

and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

3
4
5
6
7
8
9
10
11
12
13
14

"At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation and internal quotations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (citations and internal quotation marks omitted).  The clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

15

### 2.   Analysis

16
17
18
19
20
21
22

Plaintiff testified that she was unable to work because she gets seizures somewhere between two to three times a week, but that, with a recent adjustment to her medication, her seizures have reduced to maybe one seizure a week or every two weeks.  AR 401, 404-405.  She testified that after she has a seizure she must lay down for approximately an hour, maybe a little bit longer.  AR 401.  She said that her medication makes her very tired.  AR 403.  She also stated that she is unable to work, in part, because she is unable to sleep, and that she cannot be alone. AR 396, 398.

23
24
25
26
27
28

The ALJ referred to accounts from Plaintiff that she was unable to work because of "ongoing seizures, dizziness, fatigue, and periods of depression." AR 374.  The ALJ determined that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record." AR 374-375.  Specifically, the ALJ noted Plaintiff's "conservative" treatment, a lack of

United States District Court
Northern District of California

1    objective medical findings, and Plaintiff's failure to follow consistently follow the prescribed

2    course of treatment.  AR 376.  The ALJ also found that Plaintiff's reported onset date of disabling

3    seizure symptoms in 2015 was inconsistent with her driving in 2017.  AR 376.

4                                        **a.    Objective Medical Evidence**

5           In discounting her reported symptoms, the ALJ noted objective medical evidence did not

6    reveal significant findings related to her seizures.  AR 376.  Objective medical evidence could not

7    be the ALJ's sole reason for rejecting Plaintiff's statements about excess symptoms, but it was a

8    primary factor that he was required to consider.  *See* 20 C.F.R. § 404.1529(c)(2) (consideration of

9    objective medical evidence permissible).  The ALJ specifically noted that electroencephalograms

10   ("EEGs") in 2014, 2015, and 2016, as well as a 2021 MRI and periodic physical examinations,

11   were all unremarkable.  AR 376.  This picture is not entirely accurate.  Dr. Katherine Werbaneth,

12   Plaintiff's treating physician for epilepsy, actually recorded that the 2021 MRI suggested left

13   mesial temporal sclerosis.  AR 849.  Further EEG monitoring in January 2022 also reflected

14   positive findings.  AR 34-35.  While the January 2022 EEG occurred approximately six weeks

15   after the ALJ determination on December 16, 2021, the Court finds this closeness in time supports

16   that the EEG relates to her condition during the relevant time period.  *See Newman A. v. Berryhill*,

17   No. 17-CV-03010-JSC, 2019 WL 1385900, at *9 (N.D. Cal. Mar. 27, 2019) (deeming doctor's

18   opinion relevant where it related to treatment given before the ALJ's decision); *Cuadras v. Astrue*,

19   No. 2:10-CV-2142 GGH, 2011 WL 6936182, at *7 (E.D. Cal. Dec. 30, 2011) (finding records

20   dated after ALJ decision were related to the relevant period where the records post-dated the

21   decision by less than two months and referred to conditions and symptoms that manifested well

22   prior to the ALJ's decision).  While the earlier EEGs and physical examinations may be

23   appropriately characterized as unremarkable, the Court notes this lack of objective evidence

24   cannot on its own support a finding against credibility.  *See Rollins v. Massanari*, 261 F.3d 853,

25   856 (9th Cir. 2001) ("[O]nce a claimant produces objective medical evidence of an underlying

26   impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of

27   objective medical evidence to fully corroborate the alleged severity of pain.") (quoting *Bunnell v.*

28   *Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991)).

United States District Court
Northern District of California

1

United States District Court
Northern District of California

#### b.      Failure to Follow Treatment Plan

The ALJ also factored that when Plaintiff did seek care for seizures it was often noted that she had not properly taken her medication. AR 376.  "A claimant's subjective symptom testimony may be undermined by 'an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment.'"  *Trevizo*, 871 F.3d at 679 (quoting *Fair*, 885 F.2d at 603).  The ALJ correctly stated that on multiple occasions doctors recorded Plaintiff as having failed to properly take her medication.  *See* AR 776 (February 8, 2017 appointment recording Plaintiff decreased her dosage of medication on her own); AR 773 (August 23, 2017 appointment noting that Plaintiff had ceased taking Vimpat medication when she ran out and, despite this, reports not having a seizure since February); AR 763 (July 21, 2019 emergency care visit reflecting that Plaintiff reported that she had experienced a seizure, and also that she had missed a dose of her medication.  Plaintiff also reported recent prior seizures, as well as that she had stopped taking her evening dose of medication).

"[A] claimant's failure to assert [a reason for not following treatment], or a finding by the ALJ that the proffered [sic] reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony."  *Trevizo*, 871 F.3d at 679 (quoting *Fair*, 885 F.2d at 603).  In this instance, Plaintiff provided reasons.  For one, she reported that she had side effects of fatigue.  *See* AR 776 (February 8, 2017 Plaintiff reported that she decreased her dosage of medication "[g]iven that she continued to have seizures and she was having side effects" of drowsiness); AR 918 (August 3, 2021 neurology appointment noting that Plaintiff's Topamax dose was as high as 100 mg twice a day and noted perhaps some fatigue or sleepiness).  Second, she reported that her medication was not ameliorating her seizures.  *See* AR 776.  Evidence in the record reflects that Plaintiff was still experiencing seizures while compliant on her medication.  *See* AR 780 (Plaintiff experienced a motor vehicle accident on January 13, 2017 instigated by feeling a seizure coming on.  Plaintiff reported that she was compliant with her medications.); 776 (February 8, 2017 progress notes by Dr. Bardley Wrubel reflect that "[i]t is not obvious that Topamax has been beneficial in terms of her seizure management."); 756 (October 2019 Plaintiff reported frustration that she was taking her medication but was still experiencing seizures); 902 (September 1, 2021,

12

Plaintiff reported ongoing seizures despite medication); 114 (January 31, 2022 notation from Dr. Vikram Rao, epilepsy attending, that Plaintiff "has failed several anti-seizure medications and may be a candidate for epilepsy surgery."). *See Guzman v. Berryhill*, 356 F. Supp. 3d 1025, 1038 (S.D. Cal. 2018) (finding ALJ's contention that compliance with medication improved depression was not supported by the record where her symptoms persisted even when she was consistently taking her medication); *Dixon v. Berryhill*, No. EDCV 17-1837-KK, 2018 WL 6421691, at *7 (C.D. Cal. May 14, 2018) (objective medical evidence did not support that her seizures were well-controlled where she continued to have breakthrough seizures despite medication and medical monitoring). *Cf. Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ failed to address these reasons for not taking her medication and thus his weighing of Plaintiff's failure to follow the prescribed medication was erroneous. *See Trevizo*, 871 F.3d at 679-80 (finding failure to ALJ to address the believability of plaintiff's reasons for not taking prescribed narcotics was error).

### c.   Conservative Treatment

In rejecting that Plaintiff's seizures were disabling the ALJ also noted that Plaintiff's "ongoing treatment had been conservative in nature." AR 376. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Plaintiff argues that her prescription anti-seizure medications are not conservative and that the ALJ failed to point to more aggressive treatment options available. Pl's Mot. at 6.

The Court agrees that Plaintiff's treatment is not fairly characterized as conservative. As described above, Plaintiff's medication did not appear to be resolving her seizures. The record reflects that her medication was adjusted multiple times in the hopes of resolution. AR 920 (medication increased February 2020); AR 927 (medication was again increased May 20, 2021); AR 902 (medication again increased September 1, 2021). AR 37, 114 (January 2022 – six weeks after the ALJ decision – medications adjusted again and Dr. Vikram Rao, epilepsy attending,

1   noted that Plaintiff "has failed several anti-seizure medications and may be a candidate for

2   epilepsy surgery."). Plaintiff also had numerous testing related to her seizures. AR 727 (2016

3   EEG), 729 (2015 EEG), 731 (2014 EEG), 849 (noting 2021 MRI), 113 (2022 EEG). She also had

4   multiple hospital visits. AR 763 (July 21, 2019 emergency visit for seizures); 779 (January 13,

5   2017 emergency visit after vehicle accident when Plaintiff felt a seizure coming on). This

6   evidence does not support conservative treatment on whole. *Compare Pena v. Comm'r of Soc.*

7   *Sec.*, No. 1:21-CV-00301-EPG, 2022 WL 4237887, at \*5 (E.D. Cal. Sept. 14, 2022) (finding

8   conservative treatment where plaintiff took medication which helped or controlled her symptoms);

9   *Lara v. Kijakazi*, No. 1:22-CV-00992-SKO, 2023 WL 5806551, at \*8 (E.D. Cal. Sept. 7, 2023)

10  (finding conservative treatment based on "minimal neurology involvement and no

11  hospitalizations" as well as low dosages of seizure medication), *with Federico v. Comm'r of Soc.*

12  *Sec. Admin.*, No. CV2000508TUCRCCMSA, 2022 WL 17481775, at \*3 (D. Ariz. June 30, 2022)

13  (finding treatment not fairly characterized as conservative where plaintiff "frequently sought

14  treatment in the emergency room, she was transported to the hospital via ambulance on multiple

15  occasions, and she has undergone numerous imaging studies and had many appointments relating

16  to her seizure disorder."), *report and recommendation adopted,* No. CV-20-00508-TUC-RCC,

17  2022 WL 17175410 (D. Ariz. Nov. 23, 2022); *Dixon*, 2018 WL 6421691, at \*6 (finding treatment

18  not conversative where plaintiff had been receiving care for seizures for over seven years,

19  undergone EEG testing, made several adjustments to her medication, and, "[m]ost importantly,"

20  received frequent emergency treatment for seizures).

21              **d.    Driving Activity**

22          Finally, the ALJ cited the fact that Plaintiff was driving in 2017 when she had a vehicle

23  accident as inconsistent with her description that her seizures precluded her from working starting

24  in 2015. AR 376. Daily activities may provide grounds for an adverse credibility finding where

25  they contradict a plaintiff's testimony, or where they evidence transferable work skills. *Orn v.*

26  *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). It is not wholly clear from the ALJ's decision why he

27  interpreted Plaintiff's 2017 motor vehicle accident to be inconsistent with her description that she

28  was unable to work prior to 2017. The record suggests that Plaintiff's accident was precipitated

United States District Court
Northern District of California

by her sense that she was about to have a seizure.  AR 780.  Without further explanation, the Court does not consider the fact that Plaintiff had a motor vehicle accident in January 2017 related to her seizures to be a clear and convincing reason to discount her testimony that she was unable to work prior to that time period.

In sum, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms.  This error was not harmless as it impacted the ALJ's RFC determination.

**D.      ALJ Findings Regarding Medical Opinions**

**1.      Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinion in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022) (embracing the Commissioner's new regulatory framework for evaluating medical opinions).  The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians.  *See id.* at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").

Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical opinions or prior
administrative medical finding(s) will be").  "Consistency means the extent to which a medical
opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in
the claim.'"  *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The
more consistent a medical opinion(s) or prior administrative medical finding(s) is with the
evidence from other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be").

### 2.    Analysis

#### a.    Dr. Katherine Werbaneth

On September 1, 2021, Dr. Werbaneth, Plaintiff's treating physician for epilepsy, provided
a letter regarding limitations as a result of Plaintiff's epilepsy.  AR 839.  The ALJ found that Dr.
Werbaneth's opinion regarding sharp objects was consistent with Plaintiff's reports of ongoing
seizures.  AR 377.  As a result, the ALJ stated that Dr. Werbaneth's opinion was "partially
persuasive."  *Id*.  Plaintiff argues that the ALJ erred because Dr. Werbaneth did not state that
Plaintiff's inability to work was due strictly to the need to avoid sharp objects, and that the ALJ
was obligated to develop the record further regarding Dr. Werbaneth's opinion.  Pl's Mot. at 10.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record
and to assure that the claimant's interests are considered."  *Webb*, 433 F.3d at 687 (quoting *Brown
v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)).  "The ALJ's duty to supplement a
claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is
inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."  *Id.*
The Court disagrees with Plaintiff that Dr. Werbaneth's opinion on Plaintiff's limitations was
ambiguous to trigger the ALJ's obligation to develop the record regarding her opinion.  The
entirety of Dr. Werbaneth's statement reads:

> My patient, [Plaintiff] has poorly controlled epilepsy since 2013.  Due
> to her condition she is unable to drive.  It is not safe for her to work
> around sharp objects due to risk of seizures.  Please consider her case
> for SSI given inability to work due to uncontrolled seizures.

AR 839.  Plaintiff reads the last sentence of this opinion as a broad finding by Dr. Werbaneth that

1

2

3

4

5

6

7

8

9

10

11

12

13

Plaintiff is totally disabled due to uncontrolled seizures and argues that the ALJ erred in not further developing that statement to confirm Dr. Werbaneth's opinion. Pl's Mot. at 10. However, Dr. Werbaneth is explicit in her findings as to driving and sharp objects, but does not otherwise make any specific statements. Further, where the ALJ had years of medical records related to Plaintiff's seizures as well as the opinion of the State agency medical consultants, the ALJ was not required to further develop Dr. Werbaneth's opinion. *See Ford*, 950 F.3d at 1156 (doctor's opinion that plaintiff's ability to perform in the workplace was "limited" or "fair" did not trigger ALJ's duty to develop the record given years of other medical records and multiple opinions from non-examining psychiatrists). The fact that Dr. Werbaneth later submitted to the Appeals Council an additional opinion with further limitations does not establish that the ALJ failed to develop the record regarding her opinion in the first instance. *See Rice v. Saul*, 817 F. App'x 395, 397 n.1 (9th Cir. 2020) ("Evidence post-dating the ALJ's decision that Rice's hepatitis viral load has since dramatically increased does not show that the ALJ failed to develop the record a year before.").

14

15

16

17

18

19

20

21

22

23

Additionally, Plaintiff argues that the ALJ mischaracterized the record on this issue because Plaintiff did not testify that she could not work because of sharp objects, but rather that she stopped working because she could not be alone, because of difficulty sleeping, and because of stress. Pl's Mot. at 10. However, Plaintiff did actually suggest in her testimony that sharp objects were a reason she was unable to work at her previous position. AR 395-396 ("Because of the trays, you have to – we have a – the floor is made of stone. In the trays, we have sharp objects. Everything is metal . . . ."). Further, she testified that her last job did not work out because she could not get to work. AR 396 ("I don't have a driver's license, and because I have the seizures so frequently, that I couldn't there's no way that I could work. . . . I have no way to get there. I can't be alone, because I'm having them so often."). Thus, Plaintiff's argument on this point fails.

24

25

26

27

28

Plaintiff also argues that the ALJ failed to address the supportability of Dr. Werbaneth's opinion. Pl's Mot. at 9-10. The regulations do require the ALJ to provide such an analysis. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, Plaintiff provides no explanation as to how such a failure with regard to Dr. Werbaneth's opinion would have changed the RFC determination. *See Treichler*, 775 F.3d at 1099 ("Even when the ALJ commits legal error, we

1    uphold the decision where that error is harmless. . . .  An error is harmless if it is 'inconsequential

2    to the ultimate nondisability determination[.]'" (quoting *Molina,* 674 F.3d at 1115).  The Court

3    finds the ALJ's failure to discuss supportability as to Dr. Werbaneth's opinion to be harmless

4    error.

**b.      State Agency Psychological Consultants**

6         State agency psychological consultants assessed that Plaintiff had no more than mild

7    functional limitations.  AR 426.  The ALJ found these opinions consistent with daily activities,

8    including preparing simply meals, performing household tasks, and performing personal care.  AR

9    377.  Further, the ALJ found that they were consistent with mental status examinations revealing

10   no significant findings.  AR 377.  As such, the ALJ deemed the opinions persuasive.  AR 377.

11        Plaintiff argues, essentially, that the mental status examinations and daily activities are

12   insufficient bases for the consultants' conclusions.  Pl's Mot. at 11.  As to the latter, Plaintiff

13   argues that the consultants did not adequately consider Plaintiff's limitations in that she could not

14   perform household tasks when fatigued, and could only microwave meals.  *Id*.  As to the former,

15   Plaintiff argues that mental status examinations are not sufficiently reflective of a person's ability

16   to operate in a work environment.  *Id.* at 11-12.  The Court declines to address Plaintiff's

17   arguments on these points because the Court finds that they are both pertinent to the ALJ's failure

18   to address whether the consultants' opinions were adequately supported.  *See Woods*, 32 F.4th at

19   791-92 ("Supportability means the extent to which a medical source supports the medical opinion

20   by explaining the 'relevant . . . objective medical evidence.'").  The ALJ discussed consistency,

21   but he is required to address both consistency and supportability.  20 C.F.R. §§ 404.1520c(b)(2)

22   ("[W]e will explain how we considered the supportability and consistency factors for a medical

23   source's medical opinions or prior administrative medical findings in your determination or

24   decision . . . ."); 416.920c(b)(2) (same).  This failure constituted legal error, and given the

25   potential issues Plaintiff raises regarding the evidence used by the consultants, as well as the Dr.

26   Dixit's different findings related to social functioning, this failure was not harmless error.

**c.      Dr. Aparna Dixit**

28        The ALJ relied upon Dr. Dixit's consultative examination of Plaintiff on November 18,

18

2020, both in his determination at step two that Plaintiff's mental impairments were non-severe as well as in his RFC analysis at step four.  AR 372-73, 377.  The ALJ noted Dr. Dixit's assessment that Plaintiff was able to understand, remember and carry out simple instructions with no difficulty and the claimant's ability to carry out and remember detailed and complex tasks remained mildly impaired.  AR 377.  The ALJ found this opinion consistent with Plaintiff's reported depression and anxiety and consistent with mental status examinations, as well as State agency findings, and found the opinion persuasive.  AR 377.  Despite relying heavily upon Dr. Dixit's examination and deeming her opinion, or at least a portion, persuasive, the ALJ did not refer at all to Dr. Dixit's opinion that Plaintiff may have mild to moderate difficulty dealing with the public.  AR 820.  Plaintiff argues that this failure constitutes error, and this Court agrees.

Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)."  *Woods*, 32 F.4th at 792.  The ALJ in this case determined Dr. Dixit's opinion persuasive, although it is not clear whether such a determination was limited to Dr. Dixit's opinions about Plaintiff's abilities regarding simple instructions and complex tasks, or Dr. Dixit's opinion as a whole.  If the former, the ALJ erred in rejecting Dr. Dixit's opinion on Plaintiff's ability to interact with the public without providing any explanation as to why it was unsupported or unpersuasive.  If the latter, then the ALJ erred in neither including Dr. Dixit's determination of mild to moderate limitation in interacting with the public nor providing a reason for not incorporating it in the RFC.  "While moderate limitations in various areas of functioning are not necessarily *per se* disabling, the ALJ was required to either include them in the RFC or explicitly reject those portions of the doctors' opinions with reasoned explanations."  *TIMOTHY B., Plaintiff, v. ANDREW M. SAUL, Defendant.*, No. 20-CV-03411-SK, 2022 WL 181261, at *4 (N.D. Cal. Jan. 20, 2022).

The Commissioner cites *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) and argues that the ALJ is not required to incorporate moderate non-exertional limitations in his RFC finding.

1   Def.'s Mot. at 10.  However, *Hoopai* is inapposite to the issue presented, as there the Ninth Circuit

2   was assessing whether moderate depression found severe at step two would necessitate the use of

3   a vocational expert at step five.  *Id.* at 1076.  The Ninth Circuit noted that it had "not previously

4   held mild or moderate depression to be a sufficiently severe non-exertional limitation that

5   significantly limits a claimant's ability to do work beyond the exertional limitation" and thus that

6   the ALJ could rely on the Medical-Vocational Guidelines.  *Id.* at 1077.  That determination does

7   not address the issue presented here, whether the ALJ sufficiently explained his use of Dr. Dixit's

8   assessment, particularly in light of his determination that her opinion was persuasive.  *See McCoy*

9   *v. Saul*, No. 18-CV-05060-VKD, 2020 WL 2838824, at *6 (N.D. Cal. May 31, 2020)

10   (distinguishing *Hoopai* in a similar context); *Jones v. Colvin*, No. 14-CV-05260-EMC, 2015 WL

11   5964900, at *8 (N.D. Cal. Oct. 13, 2015) (finding reliance on *Hoopai* without merit in determining

12   that the ALJ erred in not providing clear and convincing reasons for discounting a doctor's

13   opinion in determining the RFC under the old guidelines).

14       "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct

15   RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "In determining

16   a claimant's RFC, an ALJ must consider all relevant evidence in the record."  *Robbins v. Soc. Sec.*

17   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  "[A]n RFC that fails to take into account a claimant's

18   limitations is defective."  *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.

19   2009).  The ALJ is not required to credit Dr. Dixit's assessment that Plaintiff may have mild to

20   moderate difficulty with the public.  However, the assessment was relevant and it does not appear

21   that the ALJ considered it, or provided a rationale for accepting or rejecting it.  *See TIMOTHY B.*,

22   2022 WL 181261, at *4 (finding error where ALJ gave great weight to doctors' opinions but did

23   not explicitly address their findings of moderate limitations in assessing the RFC).

24       Additionally, as with the opinions of the State agency psychological consultants, the ALJ

25   erred in not considering the supportability of Dr. Dixit's opinion and this error was not harmless

26   given the discrepancies between the State psychologists and Dr. Dixit.

27   **E.    Remedy**

28       The remaining question is whether to remand for further administrative proceedings or for

United States District Court
Northern District of California

United States District Court
Northern District of California

the immediate payment of benefits.  The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing."  42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018) (citations omitted).  It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ failed to provide substantial evidence regarding Plaintiff's mental health limitations, clear and convincing reasons for discrediting Plaintiff's subjective symptoms, and proper evaluation of Dr. Dixit's and the State agency psychological consultants' medical opinions. But it is not clear that the ALJ would be required to find Plaintiff disabled.  Accordingly, remand for further proceedings is appropriate.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This matter is **REMANDED** for further administrative proceedings consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated:  November 20, 2023

THOMAS S. HIXSON
United States Magistrate Judge

21